Darwin H. Bingham (7810)
Bradley W. Madsen (13289)
SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.
15 West South Temple, Suite 600
Salt Lake City, Utah 84101
Telephone: (801) 531-7870
Facsimile: (801) 326-4669
E-mail: dbingham@scalleyreading.net
E-mail: bmadsen@scalleyreading.net
Attorneys for Defendant American
United Federal Credit Union

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CLAY RAINER,<br><br>                    Plaintiff,<br><br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., RC WILLEY HOME FURNISHINGS AND AMERICAN UNITED FEDERAL CREDIT UNION,<br><br>                    Defendants. | AMERICAN UNITED FEDERAL CREDIT UNION'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION<br><br><br><br>CASE NO. 2:17-CV-00249-DS<br><br>Judge David Sam |

Defendant American United Federal Credit Union ("American United" or "AUFCU") by

and through its attorneys Darwin H. Bingham and Bradley W. Madsen, and pursuant to DUCiv-R

56-1(c) hereby opposes Plaintiff's Motion for Partial Summary Adjudication. An Appendix of

Evidence and Exhibits is included under separate cover herewith, as described by DUCiv-R

56-1(c)(6).

## Table of Contents

I.     INTRODUCTION AND BACKGROUND. ..................................................................... 3

II.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS. ..................... 4

III.   STATEMENT OF ADDITIONAL MATERIAL FACTS................................................ 12

IV.   ARGUMENT............................................................................................................... 14

1.   Statement of Law Regarding Summary Judgment and Plaintiff's Burden to Prove FCRA Violation. ................................................................................................................ 14

2.   There is a Genuine Dispute of Fact Regarding the Accuracy of the Information Reported by AUFCU to Experian. ...................................................................................... 16

    A.  AUFCU Reported Bankruptcy and Discharge to Experian in Response to Both Verification Requests.............................................................................................. 16

    B.  AUFCU Accurately Reported That $3,528 as a Charge Off. .................................... 17

    C.  The FTC Has Advised That a Creditor May Report a Charge Off to a Credit Reporting Agency if a Charge Off Occurred. .......................................................................... 20

    D.  Ms. Royce Testified that the "$5,090 Past Due as of Apr. 2016" Was Not Part of AUFCU's Report to Experian....................................................................................... 21

    E.  The Balance of "$2,851 as of Apr 2016" Was Accurate. ......................................... 22

3.   AUFCU Made a Reasonable Investigation into Plaintiff's Two Disputes. ...................... 24

4.   AUFCU Did Not Violate the FCRA and Was Not Willful in Any Violation. ................. 25

V.    CONCLUSION............................................................................................................ 26

## I.   INTRODUCTION AND BACKGROUND.

In 2008, Plaintiff borrowed $4,500 from Grantsville Federal Credit Union. AUFCU became the owner of Plaintiff's account following a merger in approximately 2016. Plaintiff modified the loan to borrow additional money, increasing the amount borrowed and owed over time. Plaintiff did not repay the loan and received a discharge through a Chapter 13 Bankruptcy on or about September 21, 2015.

As explained the Discharge of Debtor provided to AUFCU by the bankruptcy court, no attempt to collect the debt was permitted following the discharge. Grantsville and AUFCU charged the debt off, a process also referred to as "writing the debt off." Charging off a debt indicates that the debt was not paid, but that it cannot be collected.

While Plaintiff's memo provides substantial recitation of the law and various legal definitions, the factual basis for his motion is simple and flawed. Plaintiff's memorandum sets forth three bases for summary judgment. Each is addressed in detail below and summarized in this introduction.

First, Plaintiff alleges that AUFCU reported inaccurate information to Experian. This is disputed by the testimony of AUFCU, the documents disclosed in this case, and a correct understanding of a "charge off." Additionally, Plaintiff is incorrectly assuming that some information on his Experian credit report is the result of AUFCU when the evidence indicates otherwise.

Second, Plaintiff asserts that AUFCU failed to make a reasonable investigation after learning that Plaintiff disputed the information on his Experian credit report. Plaintiff reaches this

conclusion by misconstruing and twisting AUFCU's testimony. AUFCU conducted a repeated and through review of Plaintiff's entire account history and responded to the dispute adequately.

Third, Plaintiff argues that AUFCU's actions rise to the level of reckless and willful violation of the FCRA. This argument fails because AUFCU complied with the requirements of the FCRA. Additionally, Plaintiff is incorrect in his accusations regarding the training, policies, and processes of AUFCU as they related to the FCRA.

Where there is substantial evidence contradicting Plaintiff's arguments, summary judgment is not appropriate in this matter. Plaintiff's motion should be denied.

## II.   RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS.

Defendant AUFCU responds as follows to Plaintiff's "Statement of Elements and Undisputed Material Facts." Statements by Plaintiff are identified using the same outline numbering as Used in Plaintiff's memorandum. Only statements that are disputed are restated as per DUCiv-R 56-1(c)(3).

### A.   Legal Elements Required to Prevail

Plaintiff provides a statement of law in sub-parts 1 – 8. These statements of law are not disputed for purposes of this motion.

### B.   Statements of Fact.

1. Undisputed for purposes of Plaintiff's motion.

2. Undisputed for purposes of Plaintiff's motion.

3. Undisputed for purposes of Plaintiff's motion.

4. Undisputed for purposes of Plaintiff's motion.

5. AUFCU has been missing Plaintiff's "Personal file" since its merger with Grantsville.

**RESPONSE TO 5:** Undisputed, with clarification. Plaintiff's statement refers to deposition testimony by Cheri Royce that clarifies some aspects of the file held by Grantsville have not been transferred to AUFCU following the merger. Ms. Royce testified that a "personal file" was not transferred or found, but that the joint account of Mr. Rainer which gives rise to the present litigation is in AUFCU's possession. *See Deposition of Ms. Royce* (Exhibit A to Declaration of McBride) at 14:17 – 25 (Ms. Royce clarifies that the joint account which she understands to be account related to litigation). Hence, AUFCU has been in possession of all materials associated with debt that gives rise to the credit reporting dispute in this case.

6.      Undisputed for purposes of Plaintiff's motion.

7.      Undisputed for purposes of Plaintiff's motion.

8.      AUFCU furnished information on Plaintiff's Account to Experian

**RESPONSE TO 8:** Undisputed that AUFCU furnished information to Plaintiff's account with Experian but disputed to the extent that Plaintiff implies or argues that all of the information included on the Experian account is the information provided by AUFCU.  Specifically, the statement "$5,090 past due as of Apr. 2016." While this statement appears on the exhibit referred to by Plaintiff in Statement 8, Cherie Royce of AUFCU previously testified and again states in her Declaration (submitted herewith) that such information was <u>not</u> included in AUFCU's response to Experian. *Declaration of Cherie Royce* ¶¶ 46 – 49.

9.      On Plaintiff's August 24, 2016 Experian credit report, AUFCU reported the 'Status' of Plaintiff's account as "Account charged off. $3,528 written off. $5,090 past due as of Apr 2016.

**RESPONSE TO 9**: Disputed. Plaintiff supports this statement only with citation to the

deposition of Ms. Royce at pages 70 – 72.   Those pages include questions by Plaintiff's attorney about the information on the Experian report. At no point does Ms. Royce testify that such information was provided to Experian by AUFCU. Ms. Royce has stated that some of the information found on the Experian report <u>was not</u> provided by AUFCU. *Declaration of Cherie Royce* ¶¶ 46 - 49.

10.     In October 2016, Plaintiff sent a dispute letter directly to Experian, by certified mail, explaining that his AUFCU account was discharged in bankruptcy and that AUFCU was reporting the status on his account incorrectly, as he did not owe any debt.

**RESPONSE TO 10**.  Undisputed that Plaintiff sent such a letter but disputed that the letter's contents are accurate description of effect of bankruptcy or actions taken by AUFCU.

11.     AUFCU has a specific department devoted to responding to credit report disputes, and received upwards of 30 disputes per month.

**RESPONSE TO 11:**  Disputed in part. Ms. Royce testified that "the asset protection department does the disputes" and that the "IT department pulls the tape of all the records for the credit union, all loans and things like that, and submits it to the three credit reporting agencies on the 15th of every month." Hence, the testimony indicates that both an asset protection department and the IT department were involved in "responding to credit report disputes." *Ms. Royce depo* at 53:4-16.

12.     The only training that AUFCU provides to its employees concerning the FCRA is a one-time twenty (20) minute webinar followed by a written test.

**RESPONSE TO 12:** Disputed. Plaintiff misstates the evidence and testimony. Ms. Royce testified as follows:

Q. Since then, have you received any certifications?

A. When I attend certain seminars and taking credit union tests. We have to take courses in BVS. **And those are done every six months.**

Q. And what to BVS Tests consist of?

A. They talk about robbery and check cashing – check procedures, Reg CC, **the Fair Credit Report Act**, sexual assault and sexual harassment. And then pertinent to my job personally, I have to also take a course on fraid and – I think that's about all. There's nothing for lie a decedent checklist or decedent people. I handle all those accounts as well.

Q. Let's talk **specifically about the Fair Credit Reporting Act**, because that is what this case is about.

A. Yes.

Q. What – what type of – what's in involved in **that testing?**

A.      What the act is and how you need to approach it if there's an issue. And I can't remember the rest. I'm sorry. **They change every six months.**

*Ms. Royce Depo*. at 8:14-22.

The sections cited by Plaintiff go on to describe the nature of the FCRA training, which does last approximately 20 minutes **each time**. *Ms. Royce Depo*. 10:7-15. However, at no point in the cited testimony does Ms. Royce indicate that such training takes place only once rather than as part of the ongoing training done every six months. Indeed, Ms. Royce specifically states that the BVS training, which includes FCRA training occurs every six months and that she cannot recite the FCRA training components because those specific components change every six months. Ms. Royce has clarified that the training regarding FCRA is not a one-time event, but is a repeated

training that occurs every 6 months throughout an employee's time with AUFCU. *Declaration of Cherie Royce* ¶ 50.

      13.     Undisputed for purposes of Plaintiff's motion.

      14.     Undisputed for purposes of Plaintiff's motion.

      15.     Undisputed for purposes of Plaintiff's motion.

      16.     Ms. Royce spent only 25 – 30 minutes investigating Plaintiff's dispute.

**RESPONSE TO 16:** Disputed. Plaintiff is correct that Ms. Royce responded to one of Mr. Rainer's disputes by reviewing his file, verifying the information, and preparing additional information to send to Experian regarding the dispute. However, statement 16 implies or states that only one such investigation occurred. Ms. Royce responded to two different disputes provided to AUFCU through Experian. The first was a physical mailing in August of 2016 that Ms. Royce reviewed, completed and mailed by return to Experian. *Declaration of Cherie Royce* ¶¶ 24 – 28. The August 24, 2016 Experian report begins by stating 'Dispute Results,' clearly indicating that Experian produced the August 24, 2016 report following the paper dispute that Ms. Royce responded to in August of 2016. *Declaration of Cherie Royce* ¶ 29. Ms. Royce also reviewed, investigated, and responded to a second dispute sent by electronic means to AUFCU by Experian in October of 2016. *Declaration of Cherie Royce* ¶¶ 34 – 39.

      17.     Undisputed for purposes of Plaintiff's motion.

      18.     Ms. Royce looked only at AUFCU's incomplete internal records in investigating Plaintiff's claims.

**RESPONSE TO 18: Disputed**. Plaintiff's mischaracterizes the investigation and the cited testimony. Ms. Royce testified that she reviewed all of the records in AUFCU's possession. *Ms.*

*Royce Depo* 64:5-11. Those records included the account that Mr. Rainer disputed. *Ms. Royce Depo* 14:8-13 (clarifying that she reviewed account in questions, which is in AUFCU's possession, but not separate account of Mr. Rainer, which is not in AUFCU's possession). Ms. Royce has clarified that she reviewed Mr. Rainer's account, compared the information in the second verification request to the information associated with the related debt, reviewed the computer entries for the related account, and responded by entering the information in AUFCU's computer system. *Declaration of Ms Royce* ¶¶ 36 – 37. All of the records associated with account disputed by Mr. Rainer were reviewed.

19.    Undisputed for purposes of Plaintiff's motion.

20.    Undisputed for purposes of Plaintiff's motion.

21.    Undisputed for purposes of Plaintiff's motion.

22.    AUFCU's reporting of "$3,528 written off" in the "Status" section on Plaintiff's August 24, 2016 Experian credit report is incorrect because it accounts for interest and late fees, which are not collectable after a charge-off.

**RESPONSE TO 22: Disputed.** The preceding statement includes the conclusion that certain information is "inaccurate" on the basis that it is not collectible. Such a conclusion is not a statement of fact and is not a conclusion that a finder of fact would reach based on any undisputed facts. The statement "$3,528 written off" is an accurate statement. As set forth in *Declaration of Cherie Royce* at ¶ 15, that amount was written off as it was uncollectible. Plaintiff's statement 22 is circular and unsupported. As addressed below, the Federal Trade Commission has issued an opinion regarding the reporting of "charge offs" and stated that charging off an account either before or after bankruptcy is acceptable, and that reporting an account that is charged off is not a

violation of the FCRA. Hence, the Plaintiff's statement that the reporting is "incorrect" is an unsupported legal conclusion.

23.     AUFCU's reporting of "$5,090 past due as of Apr 2016" in the "Status" section of Plaintiff's August 24, 2016 Experian credit report is incorrect because that was the original amount of the loan with interest, not the balance as of April 2016.

**RESPONSE TO 23: Disputed.** The statement "AUFCU's reporting" is unsupported. No person has testified that AUFCU reported "$5,090 past due as of Apr 2016" to Experian. Rather, Ms. Royce has specifically testified that such information was <u>not</u> provided to Experian by AUFCU. *Declaration of Cherie Royce* ¶¶ 46 – 49. Plaintiff's accusation is unsupported and directly contradicted by the testimony of Ms. Royce.

24.     AUFCU has an internal policy to indicate that an account is included in bankruptcy in the status section of a credit report.

**RESPONSE TO 24**: Ms. Royce testified that it is AUFCU's policy "to indicate that an account is in bankruptcy in the comment section" and "to indicate that the account was included in bankruptcy in the status section as well."   The "comment section" and the "status section" where AUFCU may indicate bankruptcy are not on the "credit report" but are included in information provided by AUFCU to Experian AUFCU. *See e.g. Declaration of Cherie Royce* ¶¶ 24 - 28 (receiving a paper dispute verification, completing it, and returning it to Experian); *see also id*. at ¶¶ 34 – 38 (receiving and responding to an electronic dispute verification from Experian). AUFCU does not generate credit reports. *See e.g. Plaintiff's Memo* at pg 3 (explaining that AUFCU is a "furnisher" rather than a "credit reporting agency"). AUFCU furnishes information to Experian and Experian then generates a credit report. Hence, Plaintiff's statement 24 is incorrect. It could

read "AUFCU has an internal policy to indicate that an account is included in bankruptcy in response to verification requests from credit reporting agencies." This distinction is important as Plaintiff has at times assumed that the information appearing on the Experian credit report is information provided by AUFCU when it was not. It is also an important distinction because with both the paper dispute verification request and the subsequent electronic request, AUFCU informed Experian of the bankruptcy and discharge.

25.      Undisputed for purposes of Plaintiff's motion.

26.      AUFCU did not indicate that Plaintiff's account was included in bankruptcy in the status section of the AUFCU tradeline on Plaintiff's August 24, 2016 Experian credit report.

**RESPONSE TO 26**: **Disputed**. AUFCU did not prepare the August 24, 2016 Experian Credit Report. *See Response to 24.* AUFCU did respond to two different verification requests provided to it by Experian. In the first instance, AUFCU did respond by indicating Plaintiff's debt was discharged in bankruptcy. *Declaration of Cherie Royce* ¶¶ 24 – 28. AUFCU notes that the August 24, 2016 credit report includes a report on the first verification request and states that the "out come" was "Processed." *Declaration of Cherie Royce* ¶¶ 30 – 31. The term "Processed" indicates the loan was "updated or deleted." *Id.* In response to the second verification request, AUFCU reported in the "consumer indicator field" that the debt was "Discharged/Completed Bankruptcy Chapter 13." Hence, Plaintiffs statement 26 is incorrect. AUFCU indicated a discharge through bankruptcy in response to both verification requests.

27.      AUFCU's reporting of "Recent balance of $2,851 as of Apr 2016" on Plaintiff's August 24, 2016 Experian credit report is incorrect because Plaintiff's account was discharged in bankruptcy six months prior on September 21, 2015.

**RESPONSE TO 27: Disputed**. Plaintiff's statement appears to be an incomplete or unsupported conclusion. It is unclear why the discharge of Plaintiff's account would make the statement "Recent balance of $2,851 as of Apr 2016" inaccurate. As stated in the Debtors Discharge provided by the Bankruptcy court, a discharge prohibits collection efforts, but does not prevent a debtor from making payments. *Declaration of Cherie Royce* ¶¶ 20 – 22.

## III.    STATEMENT OF ADDITIONAL MATERIAL FACTS.

1.     Plaintiff Rainer and his wife initially borrowed $4,500 from Grantsville Federal Credit Union in March of 2008. *Declaration of Cherie Royce* ¶ 7. The amount borrowed was increased by $900 by a modification in April of 2009 (*id*. ¶ 9) and another $920 in July of 2010 (*id*. ¶ 12).

2.     Plaintiff Rainer filed for Bankruptcy in August of 2011. *Declaration of Cherie Royce* ¶ 14. Grantsville Federal Credit Union responded by "charging off" the amount owed of $5,528.48, as shown in the business records of the credit union. *Id*. ¶ 15. Charging off a debt means that all collection efforts are stopped and that the charge off will be reported to credit agencies. *Id*.

3.     After some payments by the bankruptcy trustee, a Discharge of Debtors After Completion of Chapter 13 Plan was entered by the bankruptcy judge and provided to the credit union. *Declaration of Cherie Royce* ¶¶ 16 – 20.

4.     The Discharge of Debtors included "Important Information." *Declaration of Cherie Royce* ¶ 21. The dischage order states that a "discharge prohibits any attempt to collect from the debtor" and that "a debtor may voluntarily pay any debt that has been discharged." *Id*.

5.      Upon receiving the Discharge of Debtors, Grantsville Federal Credit Union reviewed the loan and charged off the balance of $2,850.88 on or about September 25, 2015. *Declaration of Cherie Royce* ¶ 22.

6.      An additional $100 was charged off on September 26, 2017 for attorney fees, bringing the charged off amount to $2,950.88. *Declaration of Cherie Royce* ¶ 23.

7.      In August of 2016, AUFCU received a paper "Consumer Dispute Verification" from Experian regarding Plaintiff Rainer. *Declaration of Cherie Royce* ¶ 24.

8.      AUFCU investigated Plaintiff Rainer's account and then indicated on the Consumer Dispute Verification form that the debt was "Changed to Discharge BK 13." AUFCU also checked the box indicating "Change Data as Shown." This form was signed by Cherie Royce and mailed back to Experian. *Declaration of Cherie Royce* ¶¶ 24 – 28.

9.      AUFCU has reviewed the August 24, 2016 report from Experian and notes that it begins by stating "Dispute Results. Our reinvestigation of the dispute you recently submitted is now complete." A section of the August 24, 2016 report from Experian also addresses "Credit items" and "Out comes." As it relates to the debt of Plaintiff Rainer associated with Grantsville Federal Credit Union (subsequently AUFCU), the Experian report indicates the "outcome" is "Processed." The term "Processed" means "this item was either updated or deleted." *Declaration of Cherie Royce* ¶¶ 29 – 31.

10.     Ms. Royce will testify, as necessary, that AUFCU responded to the August Consumer Dispute Verification by informing Experian the debt of Plaintiff Rainer was discharged by chapter 13 bankruptcy and that AUFCU does not know why Experian thereafter reported as it did. *Declaration of Cherie Royce* ¶¶ 33.

Page 13

11.     In October of 2016, AUFCU received a second dispute from Experian by way of electronic means. *Declaration of Cherie Royce* ¶ 34.

12.     AUFCU again reviewed the information provided by Experian, compared it to AUFCU's records, and responded by electronic means to Experian's request. *Declaration of Cherie Royce* ¶¶ 35 – 37.

13.     AUFCU indicated in a field designated for "status" that the debt of Plaintiff Rainer was "charge off." In the field for "consumer indicator," AUFCU reported "Discharged/Completed Bankruptcy Chapter 13." The information is under the heading "Credit Bureau Information." *Declaration of Cherie Royce* ¶¶ 38.

14.     Based on the business records available to AUFCU, Ms. Royce is able to testify that the information provided to Experian in response to the second, electronic dispute verification was accurate. *Declaration of Cherie Royce* ¶¶  40 – 44.

15.     Regarding the statement on the Experian report that reads "$5,090 past due as of Apr 2016," AUFCU did not provide that information to Experian. *Declaration of Cherie Royce* ¶¶ 45 – 49.

16.     AUFCU is in possession of all the information and documents associated with the account and loan that Plaintiff has addressed in this lawsuit. *Declaration of Cherie Royce* ¶¶ 51.

17.     AUFCU employees are trained and tested on FCRA compliance multiple times a year, approximately every six months. *Declaration of Cherie Royce* ¶ 50.

## IV.   ARGUMENT.

### 1.   Statement of Law Regarding Summary Judgment and Plaintiff's Burden to Prove FCRA Violation.

Page 14

The Court is undoubtedly familiar with the requirements of Rule 56 allowing summary judgment only when "the movant shows that there is no genuine dispute as to any material fact." The Tenth Circuit Court of appeals has explained the burdens of the moving party and the inferences drawn in favor of the non-moving party:

> The party moving for summary judgment bears the burden to produce evidence in support of its claims. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the movant does so, the burden shifts to the party opposing summary judgment to demonstrate a genuine issue of material fact. *Id.* We view evidence in the light most favorable to the party opposing summary judgment. *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010). "On an appeal from summary judgment, we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 953 n.2 (10th Cir. 2012) (quotations omitted).

*Rodgers v. Beechcraft Corp.*, 2018 U.S. App. LEXIS 35028, at *63 (10th Cir. Dec. 13, 2018).

The high burdens on Plaintiff for summary judgment are enhanced by the burden of proof he must carry to prevail on his claims for Fair Credit Reporting Act Violations. Courts have explained that a Plaintiff bears the burden of showing that information from a furnisher is inaccurate or incomplete:

> [The plaintiff] bears the burden of showing that the information [ . . . ] furnished was inaccurate or incomplete. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010); *cf. Owner-Operator Indep. Drivers Ass'n v. USIS Commer. Serv.*, 537 F.3d 1184, 1192 (10th Cir. 2008) (stating plaintiff has burden of proving claim that CRA willfully violated FCRA).

*Schueller v. Wells Fargo & Co*., 559 F. App'x 733, 737 (10th Cir. 2014)

Page 15

Combining the standard on summary judgment with the burdens Plaintiff Rainer is required to carry to prevail on his claims results in a very high standard. As discussed below, Plaintiff has failed to demonstrate that summary judgment should be granted and viewing the evidence in the light most favorable to AUFCU shows that Plaintiff's request for partial summary judgment should be denied.

2.     **There is a Genuine Dispute of Fact Regarding the Accuracy of the Information Reported by AUFCU to Experian.**

Plaintiff asserts that summary judgment is property because AUFCU reported inaccurate information on Plaintiff's Consumer Credit Report. To reach this conclusion, Plaintiff ignores important statements and twists others to his own benefit. In several instances There is clear testimony indicating that the information provided by AUFCU to Experian is entirely factually and correct, preventing summary judgement. The reporting of a charge off was accurate and, as the Federal Trade Commission has opined, is not a violation of the FCRA. Additionally, Plaintiff has not established that some of the information appearing on the Experian report was provided to Experian by Plaintiff after the dispute.

A.     **AUFCU Reported Bankruptcy and Discharge to Experian in Response to Both Verification Requests.**

Plaintiff often focuses on the wrong actor and the wrong facts. For instance, Plaintiff's memorandum is largely focused on what Experian included in its August, 2016 report rather than on what AUFCU reported to Experian. While potentially related, the contents of the August 2016 report are not always what AUFCU provided to Experian.

Page 16

As set forth in the statements of facts above, AUFCU responded twice to Experian. The first time, in August of 2016, AUFCU clearly indicated that the status of the loan was discharged by a chapter 13 bankruptcy. *Declaration of Cherie Royce* ¶¶ 24 – 28. That is the information AUFCU communicated to Experian. Experian's response to that information is beyond the control of AUFCU and Plaintiff may be complaining to the wrong actor.

In response to the second, electronic request for dispute verification, AUFCU again investigated the issue, verified the amounts, and followed the process for electronic reporting AUFCU again indicated that a bankruptcy had occurred along with an associated discharge. *Declaration of Cherie Royce* ¶¶ 35 – 42.

AUFCU provided accurate information to Experian regarding Plaintiff Rainer's bankruptcy. Plaintiff's dissatisfaction with the contents of the Experian report do not mean that AUFCU reported incorrect or misleading information, and the testimony of AUFCU and the related records all create a genuine dispute of material fact regarding the accuracy of what AUFCU reported. Summary judgment would therefore be improper.

### B.   AUFCU Accurately Reported That $3,528 as a Charge Off.

The August 2016 Experian report included the following information, which Plaintiff alleges includes inaccurate information provided by AUFCU:

> **Status**
> Account charged off. $3,528 written off. $5,090 past due as
> of Apr 2016. This account is scheduled to continue on record
> until Jul 2018.

Plaintiff asserts the foregoing is inaccurate because "Ms. Royce admitted that $3,528 written off" is inaccurate because it accounts for interest and late fees which are not collectable

after a charge off." Plaintiff cites to Ms. Royce's testimony at 70:21-25 and 71:1-17. These

portions, with additional portions for context, are reproduced below.

> Q.    On the same trade line that we were just looking at, American United FCU partial account number 5884 ID, on page 4 of 16 of the credit report.
>
> A.    It shows the recent balance, as of April 206, $2,851. And that is what is showing – it's $2,850 and some odd cents. But they round – everybody rounds up the balance to an even dollar amount.
>
> Q.    And that's the recent balance, right?
>
> A.    Yes.
>
> Q.    Okay. So what about the status section?
>
> A.    Oh, status. Account charged off. $3,538, written off. 5,090 past due as of April 2016.
>
> Q.    So what number is the correct number, the 2,851 or the 5,090.
>
> A.    The 2,851 is the correct number. Because this included – **the 3,528 that was charged off** included late fees and things like that that we don't – we don't do anything with. We just take the principal balance. We're not able to collect interest and late fees after charge off. If somebody were going to pay us, we'd settle for the principal balance. So the principal balance is what is reporting.
>
> Q.    Okay, so the 2,851 is correct.
>
> A.    Is the current – yes – is the current balance.
>
> Q.    The 5,090 is not correct?

A.    The 5,090 is the original amount of the loan that he took out at Granstville Federal Credit Union. They always show the original amount of the loan.

Q.    Okay. Well, I see what you're saying, but it says 5,090 past due as of April 2016.

A.    Well, that's with interest and things like that. **I don't know where they are getting that from because that's not what I directly changed on the ACDV [Automatic Consumer Dispute Verification].**

Q.    Okay. So that's not an accurate past due amount?

A.    Not at this – well not at this time, no. I don't know why that is on there.

Q.    And the status of the account charged off, we discussed earlier – strike that and start again. **Is the status of the account charged off accurate?**

A.    **That is with – yes, with interest and late fees accumulated on the loan.**

Q.    **And you're talking about the number $3,528**?

A.    **Yes. The $3,528, yes.**

*Ms. Royce Depo* 70:21 – 72:16.

This testimony does not establish the undisputed facts that Plaintiff wishes. As to the charge off amount of $3,528, Ms. Royce testified unambiguously that such a charge off did occur and was accurate when she said "the 3,528 was charged off" and then again when she clarified the amount was accurate "with interest and late fees accumulated on the loan."   She goes on to state that the amount charged off included interest and late fees which may not have been collectible.

Page 19

Plaintiff's argument is conflating two unrelated matters – the amount charged off and an amount that could have been collected. The status clearly indicates that the $3,528 was the amount charged off, which is accurate, and that portion of the statement makes no reference to any collection, collectability, debt owed, or other matter. It means only and exactly what it says, that AUFCU charged off $3,528. Ms. Royce has clarified her testimony by way of her declaration submitted herewith at paragraph 53. Her declaration unambiguously states that $3,528 was the amount charged off, and that the charge off was correctly reported to Experian. This testimony is supported by the business records cited to in Ms. Royce's declaration.

There is a genuine dispute regarding the accuracy of the charge off amount. AUFCU has provided testimony that is also supported by business records to show that it was accurate to report to Experian that $3,528 had been charged off. Summary judgment should be denied.

## C.   The FTC Has Advised That a Creditor May Report a Charge Off to a Credit Reporting Agency if a Charge Off Occurred.

While generally arguing that the term "charge off" was inaccurate or misleading, Plaintiff has not supported this position by identifying the proper use of the term or its meaning. Hence, Plaintiff has failed to carry his burden on summary judgment and his motion should be denied.

AUFCU has provided the affidavit of Cherie Royce, along with related deposition testimony, to show that the term "charge off" was accurately used in its credit reporting. AUFCU reported a charge off only when a charge off had occurred. AUFCU's position regarding the term "charge off" is consistent with the advisory opinion of June 3, 1999 issued by the Federal Trade Commission (included herewith as Exhibit Y). The Advisory Opinion clarifies that it would be a violation to report "a discharged item as a charge off <u>when it was in fact not charged off</u>." The

opinion goes on the clarify that it is permissible to charge off an account, whether before or after the filing of bankruptcy, as well as permissible to report the account as charged off as long as the creditor has, in fact, charged off the account. *See Id*. in second paragraph.

The evidence in this case shows that AUFCU accurately reported a charge off. While not binding, the opinion of the FTC is persuasive[1] and shows that the use of the term charge off, either before or after the filing of a bankruptcy, does not rise to the level of inaccurate or misleading. Hence, viewing the evidence in the light most favorable to AUFCU establishes that summary judgment should not be granted to Plaintiff.

> **D.    Ms. Royce Testified that the "$5,090 Past Due as of Apr. 2016" Was Not Part of AUFCU's Report to Experian.**

Plaintiff argues that the portion of the status indicating "$5,090 past due of Apr. 2016" constitutes an inaccurate report on the part of AUFCU to Experian. Ms. Royce did testify that this amount constituted the original debt owed by Rainer.[2] Ms. Royce also stated that the amount of principal due had been reduced to $2,851.[3] Hence, Ms. Royce was able to confirm that at the time of her deposition the amount of $5,090 was not the amount past due and not the correct <u>current</u>

---

[1] FTC staff opinion letters do not receive *Chevron* deference, "[b]ut the commentary is entitled to respectful consideration." *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1074-75 (7th Cir. 2011)

[2] *Royce depo* 71:22-24 ("The 5090 is the original amount of the loan that he took out at Grantsville Federal Credit Union.")

[3] *See Royce Depo* at 71:18-19.

balance.[4] Ms. Royce also testified, however, that she did not know how the balance of $5,090 was included in the Experian status because it was not part of her response to the verification request from Experian:

> A.      The 5,090 is the original amount of the loan that he took out at Grantsville Federal Credit Union. They always show the original amount of the loan.
>
> Q.      Okay. Well, I see what you're saying, but it says 5,090 past due as of April 2016.
>
> A.      Well, that's with interest and things like that. **I don't know where they are getting that from because that's not what I directly changed on the ACDV.**

Ms. Royce testimony on this matter clearly creates a genuine dispute of material fact because she testified that she provided an ACDV that <u>did not</u> include the amount of "$5,090 past due of Apr. 2016" information found on the Experian report. Indeed, neither she nor AUFCU knows why Experian included such information. Ms. Royce has further explained that AUFCU's reporting to Experian did not include the amount of $5,090 by way of the sworn declaration submitted herewith, at paragraphs 45 – 49. Where AUFCU has denied providing this information to Experian, summary judgment on this basis is not proper.

> **E.      The Balance of "$2,851 as of Apr 2016" Was Accurate.**

---

[4] *See Royce Depo* at 71:21 – 72:8.

Plaintiff argues that AUFCU was incorrect when it reported a balance of "$2,851 as of Apr. 2016" to Experian. Plaintiff argues this reporting was incorrect because it was reported "over six months after the debt was discharged."

Plaintiff appears to be conflating two issues to reach an incorrect conclusion. As expressly stated in the bankruptcy documents provided by the bankruptcy court, discharge means that no effort can be made to collect a debt but also that a debtor can still voluntarily make payments on the obligation. *Declaration of Cherie Royce* ¶ 21. The order of the court included the statement "a debtor may voluntarily pay any debt that has been discharged." *Id*. This statement is clear – the debt exists and can be paid. It has merely been discharged and therefore no attempt to collect can be made. The Supreme Court has addressed the effect of a discharge and made it clear that it extinguishes some modes of enforcing a debt, while leaving others intact.

> The Court of Appeals thus erred in concluding that the discharge of petitioner's personal liability on his promissory notes constituted the complete termination of the Bank's claim against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor in personam -- while leaving intact another -- namely, an action against the debtor in rem.

*Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991) (emphasis added). This distinction makes it clear that a discharge is not the elimination or forgiveness or satisfaction of a debt. Hence, the debt remains while enforcement or collection is prohibited.

Plaintiff's argument implies that once the debt was discharged it was satisfied, or no longer existed and hence a report of a balance would be inaccurate. Plaintiff's conclusion is incorrect and unsupported. It was accurate for AUFCU to state "$2,851 as of Apr. 2016" because the statement is true. *See Declaration of Cherie Royce* ¶¶ 22, 42, 43.

Page 23

**3.     AUFCU Made a Reasonable Investigation into Plaintiff's Two Disputes.**

As Plaintiff's memorandum notes, a furnisher of credit information must undertake a reasonable investigation when responding to a dispute. A furnisher's investigation is viewed in light of the information provided to it by the Credit Reporting Agency:

> The investigation an information furnisher undertakes must be a reasonable one.
>
> A "reasonable" investigation "is one that a reasonably prudent person would undertake under the circumstances." How thorough an investigation must be to be 'reasonable' turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute." A more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute.

*Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (internal quotes and alterations omitted).   The reasonableness of an investigation is a factual question that should almost always be reserved for trial. *See Id.* at 1275. The facts of our case make it clear that summary judgment on this matter would be improper.

As to the first paper request from Experian, AUFCU reviewed the request for verification carefully, reviewed the information provided by Experian, reviewed all of the material associated with the account and responded by informing Experian of the bankruptcy and discharge. *See Declaration of Cherie Royce* ¶¶ 24 – 28. This rises well above the standard for "reasonableness" as AUFCU investigated the specific complaint and confirmed that a bankruptcy and discharge had occurred. When viewed under the summary judgement standard requiring that all inferences be drawn in AUFCU's favor, the facts clearly show that Plaintiff's motion should be denied.

As to the second electronic request, the information provided by Experian again raised the issue of bankruptcy and the accuracy of the amounts charged off. AUFCU responded reasonably by reviewing and confirming the amounts, responding with a consumer indicator for bankruptcy and discharge, and reporting accurate and correct information. Where AUFCU followed appropriate procedure, reviewed all available information, and responded correctly, their actions rise above reasonable and summary judgment should be denied.

Plaintiff raises irrelevant facts to support his argument regarding the reasonableness of AUFCU's investigation. For instance, he suggests that AUFCU should have reviewed information outside of its internal records. This was unnecessary and would not have been reasonable as the internal records of AUFCU answered the primary questions posed in the dispute verification request regarding bankruptcy and discharge. AUFCU confirmed that there had been a bankruptcy and a discharge by review of its own records, making outside review unnecessary. Similarly, AUFCU was able to determine the accuracy of the charged off amounts and the accuracy of balances all from internal records. Plaintiff's attempt to expand the scope of the review into more is unsupported by facts or law. Similarly, Plaintiff attempts to make assignment of the review to Ms. Royce and the repeated training she receives regarding verification disputes a matter of reasonableness. These arguments by Plaintiff are inconsequential because AUFCU undertook an adequate review and reached correct conclusions.

**4.     AUFCU Did Not Violate the FCRA and Was Not Willful in Any Violation.**

Plaintiff's final argument is that AUFCU's violations of the FCRA rise to the level of reckless disregard as they show an unjustifiably high risk of harm. Plaintiff points to the following in an effort to support this argument:

- AUFCU's file on Plaintiff was incomplete and AUFCU did not review documents outside of its own accounts and notes;

- AUFCU was on notice of Plaintiff's bankruptcy, but failed to correctly report the bankruptcy;

- AUFCU "concedes the balance reported on Plaintiff's August 2016 Experian credit report is incorrect and provides no explanation for why it is not corrected.

The factual bases for Plaintiff's argument are incorrect. AUFCU has the complete file regarding the account in dispute. *See response to statement of fact 5*, above; *see also Declaration of Cherie Royce* ¶ 51. Additionally, the dispute sent to AUFCU addressed bankruptcy and the amounts charged off, matters that AUFCU had precise records for. AUFCU did know of Plaintiff's bankruptcy and on at least two separate occasions it informed Experian that the subject debt had been charged off in bankruptcy. Lastly, the final point of Plaintiff – that an incorrect balance appeared on the Experian report – is a disputed mater because AUFCU denies that it provided that information to Experian regarding the $5090.

AUFCU does not come close to a "reckless disregard" standard as it has diligently and consistently sought to review and correctly report on Plaintiff Rainer's account. Where AUFCU has in fact accurately reported, summary judgment regarding a willful violation would be in error.

## V.     CONCLUSION.

Plaintiff is incorrect on the basic facts of this case. AUFCU has twice responded to Experian, and in both instances accurately reported on the amounts charged off, balances, and regarding discharge and bankruptcy. The testimony and evidence in this case creates significant disputes of fact that should prevent the Court from granting Plaintiff's request for partial summary

judgment. AUFCU therefore respectfully requests that the Court deny Plaintiff's motion and enter

an order accordingly.

DATED this 27th day of December 2018.

SCALLEY READING BATES
HANSEN & RASMUSSEN, P.C.


/s/ Bradley W. Madsen
Darwin H. Bingham
Bradley W. Madsen
Attorneys for American United Federal
Credit Union

CERTIFICATE OF SERVICE

The undersigned hereby verifies that the above notice of appearance served on the 27th day
of December 2018, on the following persons, via the method indicated:

Theron D. Morrison
Jesse P. Murff
MORRISON + MURFF
theron@morrisonmurf.com
Attorneys for Plaintiff

Ryan L. McBride
KAZEROUNI LAW GROUP
ryan@kaslg.com
Attorneys for Plaintiff

/s/ Bradley W. Madsen